# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| COMMITTEE ON THE CONDUCT OF ATTORNEYS, | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION |
| Petitioner, | |
| v. | Case No. 2:06mc952 |
| D. BRUCE OLIVER, | Magistrate Judge Paul M. Warner |
| Respondent. | |

Before the court are (1) an attorney disciplinary matter concerning the professional conduct of attorney D. Bruce Oliver and (2) five motions to dismiss the disciplinary matter filed by Mr. Oliver. This matter is governed by United States District Court for the District of Utah Rule of Practice 83-1.5.[1]

## I. PROCEDURAL HISTORY

On August 23, 2005, Judge Paul G. Cassell issued a sealed order in *Spitler v. Ogden City Corporation*[2] (the "Complaint") referring Mr. Oliver, counsel for the plaintiff in that case, to the Utah State Bar Office of Professional Conduct and the District of Utah Disciplinary Panel (the "Panel").[3] Judge Cassell had sanctioned Mr. Oliver in a separate order in that case for failure to

---

[1] *See* DUCivR 83-1.5.

[2] *See Spitler v. Ogden City Corp.*, No. 1:03cv119 PGC (D. Utah); Pet'r Ex. 2.

[3] *See* Sealed Order, *Spitler*, No. 1:03cv119 PGC (filed Aug. 23, 2005); Pet'r Ex. 2.

comply with discovery deadlines.[4]  In the Complaint, Judge Cassell noted that the court had

repeatedly dealt with Mr. Oliver's failure to comply with deadlines and court orders.[5]  Judge

Cassell conducted a docket search for cases in the United States District Court for the District of

Utah involving Mr. Oliver and found twenty-seven cases within the time period of 2001 through

2005 in which Mr. Oliver had purportedly engaged in unprofessional conduct.[6]

On September 19, 2005, the three-member Panel (consisting of a district court judge, a

magistrate judge, and a bankruptcy judge) issued an Order to Show Cause indicating that it had

determined the Complaint was not frivolous and ordered Mr. Oliver to show cause why the Panel

should not impose disciplinary action for the reasons stated in the Complaint.[7]  Judge David

Winder, then-chair of the Panel, referred the matter to attorney Max Wheeler, chair of the

Committee on Conduct of Attorneys (the "Committee").  Mr. Wheeler recused himself due to a

conflict.  Judge Winder then appointed attorney Roger G. Segal to act as chair of the Committee.

On October 6, 2005, Mr. Oliver timely filed a Verified Response to Order to Show Cause

("Response") in which he either denied or attempted to explain the individual allegations set

forth in the Complaint.[8]  On November 2, 2005, Mr. Segal designated attorney Peggy Tomsic, a

---

[4] *See* Order (1) Granting in Part & Den. in Part Defs.' Mot. to Dismiss & (2) Awarding Att'y Fees, *Spitler*, No. 1:03cv119 PGC (filed Aug. 25, 2005); Order Awarding Defs.' Costs & Att'y Fees, *Spitler*, No. 1:03cv119 PGC (filed Sept. 21, 2005); Pet'r Ex. 5 & 6.

[5] See Sealed Order, *Spitler*, No. 1:03cv119 PGC (filed Aug. 23, 2005); Pet'r Ex. 2.

[6] *See* Sealed Order, *Spitler*, No. 1:03cv119 PGC (filed Aug. 23, 2005); Pet'r Ex. 2.

[7] *See* Order to Show Cause, *Committee on the Conduct of Att'ys v. Oliver*, No. 2:06mc952 (D. Utah filed Sept. 19, 2005); Pet'r Ex. 3.

[8] *See* Resp't Verified Resp. to Order to Show Cause, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4.

member of the Committee, to investigate the allegations against Mr. Oliver and prepare a Report and Recommendation for the Committee to present to the Panel as to whether the charges against Mr. Oliver should be prosecuted or dismissed.[9]

On May 11, 2006, Ms. Tomsic submitted her Report and Recommendation (the "R&R") to the Committee.[10]  She found that in at least eighteen of the twenty-seven cases addressed in the Complaint and in one case submitted to the Committee after the Complaint was filed, Mr. Oliver had engaged in a practice of filing and prosecuting frivolous claims, knowingly delaying discovery responses, and knowingly failing to respond to orders to show cause.[11]  On September 15, 2006, the Committee adopted the R&R and presented it to the Panel.  The Committee recommended that Mr. Oliver be publicly reprimanded and suspended from the practice of law for a period of three months.

On September 28, 2006, the Panel requested that Mr. Segal, as acting Committee chair, designate a neutral hearing examiner pursuant to rule 83-1.5(h)(3)(B), which provides that upon recommendation of the Committee to prosecute the charges in the Complaint, the Committee chair is to designate one Committee member to serve as a neutral hearing examiner.[12]  However, because no member of the Committee was able to serve as a neutral hearing examiner, then-Chief Judge Dee Benson issued an order on October 24, 2006, designating Magistrate Judge Paul

---

[9] *See* DUCivR 83-1.5(h)(3).

[10] *See* R&R, *Oliver*, No. 2:06mc952 (filed May 11, 2006); Pet'r Ex. 1.

[11] *See* R&R, *Oliver*, No. 2:06mc952 (filed May 11, 2006); Pet'r Ex. 1.

[12] *See* DUCivR 83-1.5(h)(3)(B).

M. Warner as the neutral hearing examiner ("Hearing Examiner").[13]

A status and scheduling conference was held in the Hearing Examiner's chambers on November 15, 2006. The Hearing Examiner set an evidentiary hearing for December 13, 2006, and a pretrial motion cutoff date of December 1, 2006. On December 1, 2006, Mr. Oliver filed five separate motions to dismiss the disciplinary action in its entirety.[14] The Hearing Examiner issued a Scheduling Order on December 6, 2006, stating in part that the evidentiary hearing was to proceed as scheduled and that a ruling on the motions would be included in the Findings of Fact, Conclusions of Law, and Recommendation.[15]

The evidentiary hearing was held on December 13 and 14, 2006. At the hearing, the Committee was represented by Ms. Tomsic, and Mr. Oliver was represented by Orson B. West. Having heard the testimony of Mr. Oliver, reviewed the evidence, considered the arguments of counsel, and now being fully advised, the Hearing Examiner enters the following Findings of Fact, Conclusions of Law, and Recommendation.

## II.  MOTIONS TO DISMISS

As a preliminary matter, the Hearing Examiner will address Mr. Oliver's five motions to dismiss. The Hearing Examiner has carefully reviewed Mr. Oliver's motions and the memoranda submitted by both parties. The Hearing Examiner denies each of the motions to dismiss for the stated reasons and on the following grounds.

---

[13] *See* Order, *Oliver*, No. 2:06mc952 (filed Oct. 24. 2006).

[14] *See* Mot. to Dismiss, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

[15] *See* Scheduling Order, *Oliver*, No. 2:06mc952 (filed Dec. 6, 2006).

## A.  Lack of Notice

In his first motion to dismiss, Mr. Oliver contends that he was denied due process because he did not receive adequate notice of the charges against him and he has not been afforded an opportunity to be heard.[16]  Specifically, Mr. Oliver asserts that because there was some discrepancy in the number of cases set forth in the Complaint, the R&R, and the Committee's exhibits, he was unable to prepare an adequate defense.[17]  Mr. Oliver further contends that the allegations against him are so "mixed, confusing, and vague" that he is not able to effectively respond.[18]

Mr. Oliver has received more than adequate notice of the charges against him.  In particular, Mr. Oliver received a copy of the Complaint and was notified that disciplinary action could include possible disbarment.  He was given an opportunity to respond to the allegations in the Complaint and, in fact, he filed a verified Response in which he defended his actions in each of the cases cited in the Complaint.  Mr. Oliver received a copy of the R&R detailing the alleged misconduct and ethical rules at issue and the recommended sanction of suspension.

Mr. Oliver received timely notice of the date and time for the evidentiary hearing.  His counsel agreed to the time and date.  Likewise, he was provided an opportunity to present prehearing motions and, in fact, filed five separate motions to dismiss.  Mr. Oliver filed a proposed witness and exhibits list.  He received copies of the prosecution's proposed hearing

---

[16] *See* Mem. in Supp. of Resp't Mot. to Dismiss 6-9, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

[17] *See id.*

[18] *Id.* at 8.

exhibits and supplemental exhibits.  At the hearing, Mr. Oliver was present and represented by counsel.  His counsel gave an opening statement, and Mr. Oliver had the opportunity to present evidence.  Mr. Oliver testified on his own behalf, and his counsel gave a closing statement.  Mr. Oliver has had the opportunity to receive a transcript of the hearing and to submit proposed findings of fact, conclusions of law, and recommendations.

While the Hearing Examiner recognizes that there was some discrepancy in the number of cases set forth in the Complaint, the R&R, and the Committee's exhibits, this appears to be a simple clerical mistake.  Judge Cassell addressed twenty-seven cases in the Complaint.[19] However, Ms. Tomsic stated in the R&R that there were twenty-eight cases in the Complaint, rather than twenty-seven.[20]  In the R&R, Ms. Tomsic indicated that she found professional misconduct in eighteen of those twenty-eight cases.[21]  Ms. Tomsic also included an additional case that was before Magistrate Judge Brooke Wells in which she found that Mr. Oliver had engaged in further discovery misconduct after the Complaint had been filed.[22]  As such, there were nineteen total cases in which Mr. Oliver had allegedly engaged in professional misconduct set forth in the R&R.  Whether all nineteen cases were included in the Committee's initial exhibits is irrelevant because Mr. Oliver has had notice since the end of September 2006, when he received a copy of the R&R, that Ms. Tomsic would proceed on those nineteen cases. Furthermore, Ms. Tomsic supplemented the Committee's exhibits prior to the evidentiary

---

[19] *See* Sealed Order, *Spitler*, No. 1:03cv119 PGC (filed Aug. 23, 2005); Pet'r Ex. 2.

[20] *See* R&R, *Spitler*, No. 1:03cv119 PGC (filed May 11, 2006); Pet'r Ex. 1.

[21] *See* R&R, *Spitler*, No. 1:03cv119 PGC (filed May 11, 2006); Pet'r Ex. 1.

[22] *See* R&R, *Spitler*, No. 1:03cv119 PGC (filed May 11, 2006); Pet'r Ex. 1.

hearing to include evidence for all nineteen cases.

Additionally, Mr. Oliver fails to establish that the allegations against him are "mixed, confusing, and vague."[23]   The Complaint and the R&R are sufficiently detailed and specify the misconduct at issue in this disciplinary matter.   The R&R further sets forth the specific rules of professional conduct with which Mr. Oliver is charged with violating.

Based on the foregoing, the Hearing Examiner finds that the notice Mr. Oliver received regarding the allegations against him was "'reasonably calculated under all the circumstances to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections.'"[24]   There is no question that Mr. Oliver received ample notice of the charges against him and had a reasonable opportunity to defend himself against those charges.   Therefore, Mr. Oliver's first motion to dismiss is DENIED.

## B.  No Clear and Convincing Evidence

In his second motion to dismiss, Mr. Oliver contends that the allegations against him are quasi-criminal in nature and thus require a clear and convincing evidence standard.[25]   The United States Supreme Court has characterized attorney disbarment proceedings as "quasi-criminal" in nature.[26]   However, the Court in *In re Ruffalo* did not set forth the burden of proof required in

---

[23] *See* Mem. in Supp. of Resp't Mot. to Dismiss 8, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

[24] *L.C. v. Utah State Bd. of Educ.*, 188 F. Supp. 2d 1330, 1337 (D. Utah 2002) (quoting *McKee v. Heggy*, 703 F.2d 479, 481 (10th Cir. 1983)).

[25] *See* Mem. in Supp. of Resp't Mot. to Dismiss 10-12, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

[26] *In re Ruffalo*, 390 U.S. 544, 551 (1968); *see also In re Phelps*, 637 F.2d 171, 176 (10th Cir. 1981).

attorney disciplinary proceedings.[27]  In attorney disciplinary matters, courts "are divided upon whether 'preponderance' or 'clear and convincing' is the measure" of proof.[28]  Many courts apply the "clear and convincing" standard in disciplinary proceedings because of the important interests at stake.[29]  However, this court's rule governing disciplinary matters provides that "[t]he burden of establishing charges of misconduct by *preponderance of the evidence* will rest with the prosecutor."[30]  Thus, the court's rule provides for a preponderance standard.

Nevertheless, it is of no moment as to what standard of proof is required to meet due process because, as discussed in more detail below, the Hearing Examiner finds that Mr. Oliver's violations of the Utah Rules of Professional Conduct have been proved by clear and convincing evidence.[31]  Accordingly, Mr. Oliver's second motion to dismiss is DENIED.

## C.  Prior Sanctions

In his third motion to dismiss, Mr. Oliver argues that because he has been previously sanctioned in some of the cases at issue in this matter, the Hearing Examiner should dismiss the entire disciplinary action or at least dismiss those portions where sanctions have already been imposed.[32]  Specifically, Mr. Oliver contends that the doctrine of collateral estoppel prohibits

---

[27] *See In re Ruffalo*, 390 U.S. at 551.

[28] 2 Kenneth S. Broun, *McCormick on Evidence* § 341 n.29 (6th ed. 2006); *see also* 7A C.J.S. *Attorney & Client* § 103 (2006).

[29] *See, e.g.*, *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992).

[30] DUCivR 83-1.5(h)(3)(C) (emphasis added).

[31] *See infra* Part IV, ¶¶ 1-4.

[32] *See* Mem. in Supp. of Resp't Mot. to Dismiss 13-15, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

him from being disciplined in those cases in which he has already received a sanction.[33]

The doctrine of collateral estoppel precludes a court from reconsidering an issue decided in a prior action where:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[[34]]

The Hearing Examiner finds that Mr. Oliver's argument fails the first prong of the collateral estoppel test in that the issues in the cases in which Mr. Oliver was previously sanctioned are not identical with the issue presented in this disciplinary action.  In the previous cases, Mr. Oliver was sanctioned by various judges in this district for violating the Federal Rules of Civil Procedure.  Here, the issue is whether his practice of repeatedly violating the Federal Rules of Civil Procedure also violates his obligations and responsibilities under the Utah Rules of Professional Conduct.

Accordingly, the Hearing Examiner finds that Mr. Oliver has failed to demonstrate that he is entitled to a collateral estoppel defense.  Thus, Mr. Oliver's third motion to dismiss is

---

[33] *See id.*  In Mr. Oliver's third motion, he does not specifically raise double jeopardy or collateral estoppel as a defense, but states in general terms that he believes that the court cannot impose sanctions upon him for conduct for which he has already been sanctioned.  In the memorandum in opposition, Ms. Tomsic correctly asserts that the prohibition against double jeopardy does not apply to attorney disciplinary matters.  *See, e.g.*, *In re Caranchini*, 160 F.3d 420, 423-424 (8th Cir. 1998).  Mr. Oliver contends in his reply memorandum that Ms. Tomsic's interpretation that he is raising a double jeopardy defense is "farthest from the truth."  Instead, Mr. Oliver asserts that he has actually raised a collateral estoppel issue, not a double jeopardy issue.  Accordingly, the Hearing Examiner will address the collateral estoppel argument only.

[34] *Estate of True v. C.I.R.*, 390 F.3d 1210, 1232 (10th Cir. 2004) (quoting *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000)).

DENIED.

### D.  Prior Public Reprimand without Hearing

In his fourth motion to dismiss, Mr. Oliver contends that because he has already been publically reprimanded on all twenty-seven charges in the Complaint, the doctrine of collateral estoppel prohibits any further disciplinary action against him.[35]  Specifically, Mr. Oliver asserts that he was "publically humiliated"[36] in (1) an article published in the Salt Lake Tribune,[37] and that he was "publically reprimanded"[38] in (2) the Tenth Circuit's published decision *United States v. Mendoza*,[39] and in (3) Magistrate Judge Wells's report and recommendation in *Palmer v. Wal-Mart Stores*.[40]  Mr. Oliver argues that "[a]ny further sanction should be barred by collateral estoppel because a sanction, a public reprimand without due process[,] has already resulted."[41]

---

[35] *See* Mem. in Supp. of Resp't Mot. to Dismiss 15, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

[36] Reply Mem. in Supp. of Resp't Mot. to Dismiss 8, *Oliver*, No. 2:06mc952 (filed Jan. 9, 2006).

[37] *See* Pamela Manson, *Judge Refers Lawyer to Bar for Missing Deadlines*, Salt Lake Tribune, Sept. 26, 2005.

[38] Reply Mem. in Supp. of Resp't Mot. to Dismiss 8, *Oliver*, No. 2:06mc952 (filed Jan. 9, 2006).

[39] *See United States v. Mendoza*, 468 F.3d 1256 (10th Cir. 2006).

[40] *See* Report and Recommendation, *Palmer v. Wal-Mart Stores*, No. 2:04cv956 DAK (D. Utah filed Mar. 23, 2006).

[41] Reply Mem. in Supp. of Resp't Mot. to Dismiss 8, *Oliver*, No. 2:06mc952 (filed Jan. 9, 2006).

Mr. Oliver, however, has failed to demonstrate that any of the above matters constitute a "public reprimand." Black's Law Dictionary defines "reprimand" as "[a] public and formal censure or severe reproof, administered to a person in fault by his superior officer or by a body or organization to which he belongs."[42]   This definition is consistent with the Utah Supreme Court Rules of Professional Practice which define a reprimand as "public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice."[43]  The Salt Lake Tribune article, the *Mendoza* opinion, and the *Palmer* report and recommendation, while all public documents, do not rise to the level of a "public and formal censure . . . administered . . . by . . . a body or organization to which" Mr. Oliver belongs.[44]

Furthermore, the Hearing Examiner finds that, even assuming that any of the above matters constituted a "public reprimand," that does not prohibit further and/or greater sanctions against Mr. Oliver by the United States District Court for the District of Utah for repeated violations of the Utah Rules of Professional Conduct.  Accordingly, Mr. Oliver's fourth motion to dismiss is DENIED.

### E.  Impartial Tribunal–Sense of Fairness

In his fifth motion to dismiss, Mr. Oliver argues that he has been deprived of due process because Mr. Segal, acting Chair of the Committee, has a personal vendetta against him.[45]

---

[42] Black's Law Dictionary 1302 (6th ed. 1990).

[43] Utah Sup. Ct. R. Prof'l Practice 14-603.

[44] *Id.*

[45] *See* Mem. in Supp. of Resp't Mot. to Dismiss 15-17, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

Specifically, Mr. Oliver contends that Mr. Segal is prejudiced because he had a former law partner who was sued by Mr. Oliver's clients and Mr. Segal's firm paid to settle that matter.[46] Mr. Oliver apparently believes that because of that settlement, Mr. Segal is biased against him and has somehow "poisoned the impartiality" of his fellow Committee members.[47]

Mr. Oliver, however, has not supported this assertion with any evidence. At the hearing, Mr. Oliver stated that he had no personal knowledge as to Mr. Segal's involvement in the negotiations for or payment of that settlement. Other than Mr. Oliver's speculation that "there was absolutely no doubt in my mind that partners would be called in to discuss" the settlement,[48] he has provided no factual basis for his assertion. Accordingly, Mr. Oliver's fifth motion to dismiss is DENIED.

### III.  FINDINGS OF FACT

1.  The Procedural History is hereby incorporated into the Findings of Fact.[49]

2.  Mr. Oliver is a member of the bar of the United States District Court for the District of Utah and appears frequently before the court. Mr. Oliver has been practicing law for nineteen years.[50]

### A.  Applicable Rules

---

[46] *See id.*

[47] Resp't Mot. to Dismiss 2, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

[48] Evidentiary Hearing Transcript 145 (Dec. 13, 2006) (hereinafter "Hr'g Tr.").

[49] *See supra* Part I.

[50] *See* Hr'g Tr. 153.

3.  Attorneys admitted to practice in this district must satisfy specific admission requirements.[51]  In particular, "[a]ll attorneys practicing before this court,  . . . are governed by and must comply with the rules of practice adopted by this court, and unless otherwise provided by these rules, with the Utah Rules of Professional Conduct, as revised and amended and as interpreted by this court."[52]  Additionally, the recently amended rule 83-1.2(a)(1) has added the requirement that at the time of annual registration, attorneys must certify that they have read and are familiar with the Utah Rules of Professional Conduct.[53]

4.  Mr. Oliver is charged with violating rules 3.1, 3.2, 3.4, and 8.4 of the Utah Rules of Professional Conduct.[54]

5.  Rule 3.1, Meritorious Claims and Contentions, provides, in relevant part, that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law."[55]  The comment to this rule also provides, in relevant part:

> [1] The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. . . .

---

[51] *See* DUCivR 83-1.1(a).

[52] *Id.* 83-1.1(h).

[53] *See* DUCivR 83-1.2(a)(1) (amended Dec. 1, 2006).

[54] *See* R&R, *Oliver*, No. 2:06mc952 (filed May 11, 2006); Pet'r Ex. 1.

[55] Utah R. Prof'l Conduct 3.1.

[2] What is required of lawyers . . . is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good-faith argument on the merits of the action taken or to support the action taken by a good-faith argument for an extension, modification or reversal of existing law.[56]

6.  Rule 3.2, Expediting Litigation, provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."[57]  The comment to this rule also provides:

[1] Dilatory practices bring the administration of justice into disrepute. Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. The standard is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.[58]

7.  Rule 3.4, Fairness to Opposing Party and Counsel, provides:

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or

---

[56] *Id.* cmt.

[57] Utah R. Prof'l Conduct 3.2.

[58] *Id.* cmt.

offer an inducement to a witness that is prohibited by law;

(c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

(f)(1) the person is a relative or an employee or other agent of a client; and

(f)(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.[59]

The comment to this rule also provides, in relevant part, that "[t]he procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties.  Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure and the like."[60]

8.  Rule 8.4(a), Misconduct, provides, in relevant part:

---

[59] Utah R. Prof'l Conduct 3.4.

[60] *Id.* cmt.

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the [r]ules of [p]rofessional [c]onduct, knowingly assist or induce another to do so, or do so through the acts of another. . . .[61]

The comment to this rule also provides, in relevant part, that "[l]awyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct or knowingly assist or induce another to do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf."[62]

9.  Mr. Oliver understands that his practice of law before this court is governed by the Federal Rules of Civil Procedure and the Utah Rules of Professional Conduct.[63]

10.  Mr. Oliver understands that this court has the authority to sanction him for any violations of the Utah Rules of Professional Conduct.[64]

11.  Mr. Oliver understands that rule 3.1 of the Utah Rules of Professional Conduct prohibits him from filing frivolous claims, and requires him, prior to asserting a claim or contention, to inform himself about the facts of his clients' cases and the applicable law and determine that he can make good faith arguments in support of his clients' positions.[65]

12.  Mr. Oliver understands that rule 3.1 protects opposing parties from the filing of

---

[61] Utah R. Prof'l Conduct 8.4(a).

[62] *Id.* cmt.

[63] *See* Hr'g Tr. 154-56.

[64] *See id.* at 156.

[65] *See id.* at 161-52.

16

frivolous claims and contentions and that a violation of rule 3.1 could potentially cause injury to opposing parties and the court.[66]

13.  Despite Mr. Oliver's professed understanding, since at least 2001, he has engaged in a pattern of filing complaints, claims, and contentions that he knows have no basis in law or fact, and continued that pattern even after Judge Cassell filed the Complaint in this matter.  That pattern is illustrated by Mr. Oliver's misconduct in the cases described in paragraphs 18-25, 28-33, and 35-36 below.

14.  Mr. Oliver understands that rule 3.2 of the Utah Rules of Professional Conduct prohibits him from engaging in dilatory practices and from failing to expedite a case for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose.[67]

15.  Mr. Oliver understands that rule 3.4 of the Utah Rules of Professional Conduct prohibits him from failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party.[68]

16.  Despite Mr. Oliver's professed understanding, since at least 2001, he has knowingly engaged in a pattern of not responding to legitimate discovery requests, orders to show cause, and dispositive motions, and continued that pattern even after Judge Cassell filed the Complaint in this matter.  That pattern also included conduct that was unfair to opposing parties and counsel. That pattern is illustrated by Mr. Oliver's misconduct in the cases described in paragraphs 18-24,

---

[66] *See id.* at 163, 182.

[67] *See id.* at 167.

[68] *See id.* at 170.

26-31, 34, and 37-52 below.

## B.  Specific Cases

17.  The following specific cases, as submitted by the prosecutor from court records, illustrate Mr. Oliver's repeated violations of the Utah Rules of Professional Conduct.[69]

18.  In ***Cook v. Chase Manhattan Mortgage Corp.***, [70] the plaintiff's third cause of action was dismissed after Mr. Oliver failed to respond to the defendant's motion to dismiss.  In his Response and during his testimony at the evidentiary hearing, Mr. Oliver admitted that the "third cause of action was dismissed for statute of limitations, [and the motion] had merit so a dismissal was appropriate.  No response was necessary."[71]   In an attempt to explain the circumstances surrounding the alleged misconduct at issue, Mr. Oliver continually and repeatedly testified to events in this case that were not related to the order dismissing the plaintiff's third cause of action and that occurred over a year after the third cause of action was dismissed.[72]  Based on Mr. Oliver's admission and failure to respond to the motion to dismiss, the Hearing Examiner finds that there was no basis in law or fact for Mr. Oliver to assert the third cause of action, Mr. Oliver failed to make reasonable efforts to expedite litigation, and he knowingly disobeyed an obligation under the rules of a tribunal.

---

[69] *See supra* Part III.A.

[70] *See Cook v. Chase Manhattan Mortgage Corp.*, No. 2:05cv16 TS (D. Utah); Pet'r Ex. 39.

[71] Resp't Verified Resp. to Order to Show Cause 4, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4; Hr'g Tr. 199-200.

[72] *See* Hr'g Tr. 61-62, 187-88.

19.   In **Holmes v. State of Utah**,[73] the case was dismissed after Mr. Oliver failed to

respond to an order to show cause why the case should not be dismissed for failure to serve

process within 120 days.[74]  Mr. Oliver admitted in his Response and during his testimony at the

evidentiary hearing that he did not pursue the case because there had been no adverse action

taken against his client by the employer:  "Given the fact that no tangible employment action had

been taken against Ms. Holmes, the matter was voluntarily not pursued."[75]  Accordingly, based

on Mr. Oliver's admission and failure to respond to the order to show cause, the Hearing

Examiner finds that there was no basis in law or fact for Mr. Oliver to file the complaint, Mr.

Oliver failed to make reasonable efforts to expedite litigation, and he knowingly disobeyed an

obligation under the rules of a tribunal.

20.   In **Drake v. State of Utah**,[76] the plaintiff's claim was dismissed after Mr. Oliver

failed to respond to a motion to dismiss.[77]  Mr. Oliver admitted in his Response and during his

testimony at the evidentiary hearing that he did not respond to the motion to dismiss because "the

motion to dismiss had merit."[78]  The memorandum in support of the motion to dismiss

---

[73] *See Holmes v. State of Utah*, No. 2:04cv940 PGC (D. Utah); Pet'r Ex. 7.

[74] *See* Order of Dismissal, *Holmes*, No. 2:04cv940 PGC (filed Apr. 19, 2005).

[75] Resp't Verified Resp. to Order to Show Cause 5, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4; Hr'g Tr. 186-87, 200.

[76] *See Drake v. State of Utah*, No. 2:04cv689 DAK (D. Utah); Pet'r Ex. 41.

[77] *See* Order, *Drake*, No. 2:04cv689 DAK (filed May 2, 2005).

[78] Resp't Verified Resp. to Order to Show Cause 5, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4, 8, 41; Hr'g Tr. 200.

demonstrates that the grounds for the motion to dismiss were, *inter alia*, that (a) the State of Utah was immune from the plaintiff's claim by virtue of the Eleventh Amendment of the U.S. Constitution, (b) the plaintiff failed to timely serve the summons and complaint, and (c) the plaintiff failed to name the proper state official.[79]  Based on Mr. Oliver's admission and failure to respond to the motion to dismiss, the Hearing Examiner finds that there was no basis in law or fact for Mr. Oliver to file the claim, Mr. Oliver failed to make reasonable efforts to expedite litigation, and he knowingly disobeyed an obligation under the rules of a tribunal.

21.  In ***Bohn v. Jordan School District***,[80] the case was dismissed after Mr. Oliver failed to respond to an order to show cause why the case should not be dismissed for failure to serve process within 120 days.[81]  Mr. Oliver admits in his Response that he did not respond to the order to show cause because the dismissal was appropriate:  "The order to show cause speaks for itself. The dismissal was appropriately considered because of the outcome of . . . another case of mine."[82]   At the evidentiary hearing, however, Mr. Oliver testified that he and his client "decided that we would allow the [c]ourt to dismiss it pursuant to the order to show cause, which was an option that they had given us in the order to show cause.  So we weren't disobeying or ignoring,

---

[79] *See* Mem. Supp. Mot. Dismiss, *Drake v. State of Utah*, No. 2:04cv689 DAK (filed Jan. 14, 2005); Pet'r Ex. 41.

[80] *See Bohn v. Jordan School District*, No. 2:04cv531 TS (D. Utah); Pet'r Ex. 9.

[81] *See* Order of Dismissal, *Bohn*, No. 2:04cv531 TS (filed Sept. 2, 2005).

[82] Resp't Verified Resp. to Order to Show Cause 5-6, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4.

we just acquiesced on what the [c]ourt had said."[83]

22.  It should be noted here that Mr. Oliver contended at the evidentiary hearing that he believed it was appropriate to simply fail to respond to an order to show cause as a way to properly have a case dismissed.[84]  Such an attitude shows a shocking lack of understanding of his responsibilities as a lawyer and practitioner before this court.

23.  The order to show cause in *Bohn* specifically states that the "[p]laintiff is *directed to respond in writing* within 20 days from the date of this order and inform the [c]ourt of the status of the case and intentions to proceed.  Failure to do so will result in dismissal of the case."[85]  The Hearing Examiner does not read the order to show cause as giving the plaintiff an "option" to respond.  It ordered the plaintiff to respond and informed the plaintiff what the consequences would be for failure to act.  Accordingly, based on Mr. Oliver's admission that dismissal was appropriate and his failure to respond to the order to show cause, the Hearing Examiner finds that there was no basis in law or fact for Mr. Oliver to file the complaint, Mr. Oliver failed to make reasonable efforts to expedite litigation, and he knowingly disobeyed an obligation under the rules of a tribunal.

24.  In ***McGraw v. Salt Lake Community College***,[86] Mr. Oliver failed to respond to a

---

[83] Hr'g Tr. 67.

[84] *See infra* Part III.C.iv.

[85] Order to Show Cause, *Bohn*, No. 2:04cv531 TS (filed Aug. 3, 2005) (emphasis added).

[86] *See McGraw v. Salt Lake Community College*, No. 2:03cv765 TS (D. Utah); Pet'r Ex. 15.  This case was consolidated into *Rivera v. Salt Lake Community College*, 2:03cv764 DB (D. Utah).

motion to dismiss.  The court dismissed all claims against all defendants except a Title VII action against Salt Lake Community College and issued an order to show cause on that remaining claim because of "the abnormally lengthy silence by Plaintiffs in this case."[87]   In his Response and during his testimony, Mr. Oliver admitted that he did not respond to the motion to dismiss because "RICO claims seem unwelcome in Utah."[88]  Mr. Oliver further asserts that he allowed the individual defendants to be dismissed for "tactical" reasons.[89]  Accordingly, based on Mr. Oliver's admission and failure to respond to the motion to dismiss, the Hearing Examiner finds that there was no basis in law or fact for Mr. Oliver to file the RICO claim or the Title VII claim against the individual defendants, Mr. Oliver failed to make reasonable efforts to expedite litigation, and he knowingly disobeyed an obligation under the rules of a tribunal.

25. In ***Rivera v. Salt Lake Community College***,[90] Mr. Oliver failed to respond to two motions to dismiss filed by individual defendants.[91]  In his Response and during his testimony at the evidentiary hearing, Mr. Oliver admitted that he did not respond to the motion to dismiss

---

[87] Order Granting Defs.' Mot. to Dismiss & to Show Cause 2, *McGraw*, No. 2:03cv765 TS (filed July 6, 2004).

[88] Resp't Verified Resp. to Order to Show Cause 7, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4; Hr'g Tr. 191.

[89] Resp't Verified Resp. to Order to Show Cause 7, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4.

[90] *See Rivera*, No. 2:03cv764 DB; Pet'r Ex. 16.

[91] *See* Docket, *Rivera*, No. 2:03cv764 DB; Pet'r Ex. 16.

because "RICO claims seem unwelcome in Utah."[92]  Mr. Oliver further asserts that he allowed

the individual defendants to be dismissed for "tactical" reasons.[93]  Accordingly, based on Mr.

Oliver's admission and failure to respond to the motion to dismiss, there was no basis in law or

fact for Mr. Oliver to file the complaint against the individual defendants.

26.  Magistrate Judge Wells also sanctioned Mr. Oliver in *Rivera* for failing to provide

relevant discovery, which necessitated three motions to compel filed by the defendants.[94]  The

motions to compel were filed on March 10, 2005, March 17, 2005, and June 13, 2005.[95]  In the

June 13, 2005 motion, the defendants stated that shortly after the March 10, 2005 motion was

filed, Mr. Oliver contacted counsel for the defendants and indicated that certain computer

problems had delayed the plaintiffs' ability to respond to the outstanding discovery and that all

discovery would be responded to within the next week or so.[96]  Mr. Oliver, however, failed to

provide the promised discovery.[97]  Then, on June 23, 2005, after the third motion to compel was

filed, Mr. Oliver advised counsel for one of the defendants that a conflict had arisen requiring

---

[92] Resp't Verified Resp. to Order to Show Cause 7-8, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4; Hr'g Tr. 191.

[93] Resp't Verified Resp. to Order to Show Cause 7, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4.

[94] *See* Order & Memorandum Decision, *Rivera*, No. 2:03cv764 DB (filed Jan. 26, 2006); Pet'r Ex. 45.

[95] *See* Docket, *Rivera*, No. 2:03cv764 DB; Pet'r Ex. 16.

[96] *See* Mot. to Compel 2, *Rivera*, No. 2:03cv764 DB (filed June 13, 2005).

[97] *See* Docket, *Rivera*, No. 2:03cv764 DB; Pet'r Ex. 16.

Mr. Oliver to withdraw from the matter.[98]  Mr. Oliver indicated that even though he had to

withdraw from the case, he would first respond to all of the outstanding discovery requests.[99]

Again, Mr. Oliver failed to provide most of that discovery,[100] and he failed to respond to any of

the motions to compel.[101]

27.  At the evidentiary hearing, Mr. Oliver admitted that he "did not respond to the

discovery on a timely basis" because of the dilatory conduct of one of his employees.[102]  He

reasoned that he should not have been sanctioned in this case because he had filed a motion to

withdraw as counsel and a motion to stay the proceedings.[103]  However, Mr. Oliver did not file

that motion until September 30, 2005–three months after notifying opposing counsel of the

conflict and more than six months after the first motion to compel was filed.[104]  Based on Mr.

Oliver's failure to respond to all of the discovery requests, to respond the motions to compel, and

to keep the court apprised of his intent to withdraw in a timely manner, the Hearing Examiner

finds that Mr. Oliver has failed to make reasonable efforts to expedite this case for the purpose of

---

[98] *See* Renewed Mot. to Compel 2, *Rivera*, No. 2:03cv764 DB (filed July 22, 2005).

[99] *See id.*

[100] Mr. Oliver apparently provided partial responses to some of the interrogatories and document requests on August 31, 2005. *See* Docket, *Rivera*, No. 2:03cv764 DB; Pet'r Ex. 16.

[101] *See* Docket, *Rivera*, No. 2:03cv764 DB; Pet'r Ex. 16.

[102] Hr'g Tr. 75.

[103] *See* Hr'g Tr. 74.

[104] *See* Mot. to Stay Proceeding & to Withdraw as Att'y, *Rivera*, No. 2:03cv764 DB (filed Sept. 30, 2005).

frustrating an opposing party's attempt to obtain rightful redress or repose and has failed to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

28. In ***Beene v. State of Utah***,[105] the court granted a motion for sanctions under rule 11 of the Federal Rules of Civil Procedure against Mr. Oliver for filing frivolous claims against the Utah Attorney General's Office.  The court noted that Mr. Oliver had been instructed on a least three occasions that the Utah Attorney General's Office was immune from suit under the Eleventh Amendment to the U.S. Constitution.[106]  When Mr. Oliver refused to withdraw the cause of action, the court imposed sanctions in the amount of $500.[107]  The court specifically admonished Mr. Oliver stating:

> Ms. Beene's counsel is well aware of the fact that the Attorney General's Office is immune from suit on Ms. Beene's remaining claims.  Ms. Beene's counsel has sued the Utah Attorney General's Office on similar claims in the recent past, and the claims have been dismissed on Eleventh Amendment immunity grounds.  Indeed, this [c]ourt, in *Robert Joseph v. Salt Lake City Corp. et al.*, Civil No. 2:00CV340DAK, dismissed similar claims brought by Ms. Beene's counsel against the Attorney General's Office.  The [c]ourt's decision was based, in large part, on Eleventh Amendment immunity grounds.  *See* Order Dated July 17, 2003, *Joseph v. Salt Lake City Corp.*, Civil No. 2:00CV340DAK.  This [c]ourt also dismissed–on Eleventh Amendment grounds–similar claims against the University of Utah in the Lead Case, into which Ms. Beene's Complaint was later consolidated.  *See* Order Dated February 27, 2003, *Samuel Beene et al. v. State of Utah (University of Utah and Office of the Attorney General)*, Civil No. 2:02CV322DAK.  Also, in *Richard Sergi v. State of Utah et al.*, Civil No. 2:03CV332 PGC, Judge Cassell in this District also granted the State of Utah's

---

[105] *See Beene v. State of Utah*, No. 2:02cv322 DAK (D. Utah).

[106] Order 8, *Beene*, No. 2:02cv322 DAK (filed Aug. 4, 2004); Pet'r Ex. 22.

[107] Order 8, *Beene*, No. 2:02cv322 DAK (filed Aug. 4, 2004); Pet'r Ex. 22.

motion to dismiss based on Eleventh Amendment immunity. *See* Order Dated
October 3, 2003, *Richard Sergi v. State of Utah et al.*, Civil No. 2:03CV332 PGC.
Thus, it is unfathomable to the [c]ourt why Ms. Beene's counsel continues to
assert such unmeritorious claims.[108]

The court further held that

> The claims against the Utah Attorney General's Office are not warranted by
> existing law or by a nonfrivolous argument for the extension, modification or
> reversal of existing law or the establishment of new law.  Because the claims are
> without legal merit, and because Ms. Beene's counsel has been instructed–on at
> least three prior occasions–that such claims are barred against the state based on
> Eleventh Amendment immunity, the [c]ourt finds that the claims against the Utah
> Attorney General's Office were made for an improper purpose, either to harass, to
> cause unnecessary delay, and/or to needlessly increase the burden and cost to
> Defendants and this [c]ourt.  Accordingly, pursuant to [r]ule 11 and DUCivR 1-2,
> this [c]ourt imposes sanctions in the amount of $500 against Ms. Beene's
> counsel.[109]

Accordingly, based on that order, there was no basis in law or fact for Mr. Oliver to file the

claims against the Utah Attorney General's Office, Mr. Oliver has failed to make reasonable

efforts to expedite this case for the purpose of frustrating an opposing party's attempt to obtain

rightful redress or repose, and he knowingly disobeyed an obligation under the rules of a tribunal.

29.  In ***Salas v. Brems***,[110] the plaintiff's claim was dismissed after Mr. Oliver failed to

respond to an order to show cause why the case should not be dismissed.  In his Response and

during his testimony at the evidentiary hearing, Mr. Oliver admitted that he filed the complaint

after the plaintiff disappeared "(evidently losing interest in the matter)," because Mr. Oliver

---

[108] Order 6, *Beene*, No. 2:02cv322 DAK (filed Aug. 4, 2004); Pet'r Ex. 22.

[109] Order 7-8, *Beene*, No. 2:02cv322 DAK (filed Aug. 4, 2004); Pet'r Ex. 22.

[110] *See Salas v. Brems*, No. 2:02cv273 TS (D. Utah); Pet'r Ex. 23.

wanted to protect the plaintiff's interests and avoid a potential malpractice claim in case his client reappeared.[111]   The order to show cause in *Salas* specifically states that the "[p]laintiffs are *directed to respond in writing* within 10 days from the date of this order and inform the [c]ourt of the status of the case and intentions to proceed.  Failure to do so will result in dismissal of the case."[112]   Based on Mr. Oliver's admission and failure to respond to the order to show cause, there was no basis in law or fact for Mr. Oliver to file the claim after his client disappeared, Mr. Oliver failed to make reasonable efforts to expedite litigation, and he knowingly disobeyed an obligation under the rules of a tribunal.

30.  In ***Martin v. Salt Lake Community College***,[113] Mr. Oliver alleged in the complaint that his clients had been discriminated against under Title VII of the Civil Rights Act of 1964[114] but failed to link the alleged adverse employment action to their race, color, religion, sex, or national origin.[115]   At the hearing on the defendant's motion to dismiss, Mr. Oliver requested leave to amend the complaint.[116]   The motion to dismiss was taken under advisement, and Mr.

---

[111] Resp't Verified Resp. to Order to Show Cause 9, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4; Hr'g Tr. 84.

[112] Order to Show Cause 1, *Salas*, No. 2:02cv273 (filed June 2, 2004) (emphasis added).

[113] *See Martin v. Salt Lake Community College*, No. 2:04cv141 DB (D. Utah); Pet'r Ex. 42.

[114] *See* 42 U.S.C. § 2000e-2(a)(1).

[115] *See* Complaint, *Martin*, No. 2:04cv141 DB (filed Feb. 6, 2004).

[116] *See* Docket, *Martin*, No. 2:04cv141 DB; Pet'r Ex. 42.

Oliver was given thirty days to amend the complaint.[117]   No amended complaint was filed within

that period of time and, as a result, the motion to dismiss was granted.[118] Mr. Oliver contends that

he and his client "agreed to pursue state claim remedies instead of amending the Title VII

complaint" and allowed the court to dismiss the complaint.[119]   In his Proposed Witness and

Exhibits List for the evidentiary hearing, Mr. Oliver stated that "[t]he motion to dismiss argued

no 'tangible adverse action' had been taken.  Since the dismissal, the controlling case law no

longer requires 'tangible adverse action'. . . . Admittedly, Mr. Oliver was ahead of the trend of

the law."[120]   Thus, Mr. Oliver admits that, at the time he filed the complaint, the complaint was

contrary to controlling case law.  Accordingly, based on Mr. Oliver's admissions and failure to

amend the Title VII claim, the Hearing Examiner finds that there was no basis in law or fact for

filing the complaint in this court, Mr. Oliver failed to make reasonable efforts to expedite

litigation, and he knowingly disobeyed an obligation under the rules of a tribunal.

     31.   In ***Trujillo v. Group 4 Falck***,[121] two of the three plaintiffs were dismissed after Mr.

Oliver failed to respond to a motion to dismiss.[122]   Mr. Oliver admits that he did not respond to

---

[117] *See* Docket, *Martin*, No. 2:04cv141 DB; Pet'r Ex. 42.

[118] *See* Docket, *Martin*, No. 2:04cv141 DB; Pet'r Ex. 42.

[119] Resp't Verified Resp. to Order to Show Cause 7, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4.

[120] Resp't Proposed Witness and Ex. List 9, *Oliver*, No. 2:06mc952 (filed Dec. 7, 2006); Pet'r Ex. 51; *see* Hr'g Tr. 201-203.

[121] *See Trujillo v. Group 4 Falck*, No. 2:02cv162 TC (D. Utah); Pet'r Ex. 40.

[122] *See* Order, *Trujillo*, No. 2:02cv162 TC (filed Sept. 29, 2004).

the motion to dismiss because "[t]he motion[ was] with merit."[123]  Based on Mr. Oliver's admission and failure to respond to the motion to dismiss, the Hearing Examiner finds that there was no basis in law or fact for Mr. Oliver to file claims on behalf of the two dismissed plaintiffs, Mr. Oliver failed to make reasonable efforts to expedite litigation, and he knowingly disobeyed an obligation under the rules of a tribunal.

32.  In ***Spitler v. Ogden City Corp.***,[124] the court granted summary judgment to the defendant officers on the plaintiff's claims of wrongful detention, illegal entry, unlawful arrest, malicious prosecution, and conspiracy to violate civil rights because the plaintiff "failed to respond to the officers' motion as to those claims at all."[125]  The plaintiff did respond to the excessive force claim, and the court denied summary judgment on that claim.[126]

33.  At the evidentiary hearing, Mr. Oliver attempted to sidestep the question as to whether or not he responded to the summary judgment motion as to the five claims above but ultimately admitted that he did not respond:  "And we chose -- we did respond.  That statement is misleading in the way you present it because we did respond.  And as was shown by the ruling

---

[123] Resp't Verified Resp. to Order to Show Cause 10, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4.  Ms. Tomsic alleged that there were two motions to dismiss in this case for which Mr. Oliver failed to provide a response.  Mr. Oliver apparently agrees with this assertion. However, the Hearing Examiner could only find one motion to dismiss for which Mr. Oliver failed to provide a response.

[124] *See Spitler v. Ogden City Corp.*, No. 1:03cv119 PGC (D. Utah).

[125] Order Granting in Part and Den. in Part Defs.' Mot. for Summ. J. 2, *Spitler*, No. 1:03cv119 PGC (filed Oct. 19, 2006); Resp't Ex. 1.

[126] *See* Order Granting in Part and Den. in Part Def.s' Mot. for Summ. J. 13-14, *Spitler*, No. 1:03cv119 PGC (filed Oct. 19, 2006); Resp't Ex. 1.

that Judge -- well, that's the exhibit there, [Respondent's] Exhibit 1, that Judge Cassell issued

that we prevailed on one that we responded to.  The others we didn't respond to and so he

dismissed them."[127]  Accordingly, based on Mr. Oliver's admission and failure to respond to the

motion for summary judgment regarding the plaintiff's claims of wrongful detention, illegal

entry, unlawful arrest, malicious prosecution, and conspiracy to violate civil rights, there was no

basis in law or fact for Mr. Oliver to assert the claims that were dismissed.

34.   The court in *Spitler* also awarded approximately $4800 solely against Mr. Oliver for

twice belatedly responding to interrogatories only after being compelled or threatened with

sanctions.[128]  Prior to filing each motion to compel, opposing counsel invested a significant

amount of time in an effort to have Mr. Oliver comply with his discovery obligations without

court involvement.[129]  Mr. Oliver did not respond to opposing counsel until after the first motion

to compel was granted and the second motion to compel was filed.[130]  Mr. Oliver admitted that he

was responsible for the delay and that a sanction was appropriate.[131]  Based on Mr. Oliver's

admission and those orders, the Hearing Examiner finds that Mr. Oliver failed to make a

---

[127] Hr'g Tr. 198.

[128] *See* Order Awarding Defs.' Costs & Att'y Fees 1-2, *Spitler*, No. 1:03cv119 PGC (filed Sept. 21, 2005); Pet'r Ex. 6.

[129] *See* Order (1) Granting in Part and Den. in Part Defs.' Mot. to Dismiss & (2) Awarding Att'y Fees 2-3, *Spitler*, No. 1:03cv119 PGC (filed Aug. 25. 2005); Pet'r Ex. 5.

[130] *See* Order (1) Granting in Part and Den. in Part Defs.' Mot. to Dismiss & (2) Awarding Att'y Fees 2-3, *Spitler*, No. 1:03cv119 PGC (D. Utah filed Aug. 25. 2005); Pet'r Ex. 5.

[131] *See* Order (1) Granting in Part and Den. in Part Defs.' Mot. to Dismiss & (2) Awarding Att'y Fees 2, *Spitler*, No. 1:03cv119 PGC (filed Aug. 25. 2005); Pet'r Ex. 5.

reasonably diligent effort to comply with a legally proper discovery request by an opposing party and failed to make reasonable efforts to expedite litigation.

35.  In *Jaramillo v. Price*,[132] the court granted summary judgment against the plaintiff and ordered Mr. Oliver to pay attorney fees in the amount of $500 "[d]ue to the insufficient basis upon which this lawsuit was brought."[133]  Based on that order, the Hearing Examiner finds that there was no basis in law or fact for Mr. Oliver to file the complaint.

36.  In *Joseph v. Salt Lake City Corp.*,[134] the court granted a motion for rule 11 sanctions against Mr. Oliver for making "baseless and scurrilous allegations of criminal and professional misconduct" against opposing counsel and for Mr. Oliver's "routine practice of including in his pleadings ad hominem attacks and/or allegations of criminal or professional misconduct regarding opposing counsel or their clients."[135]  The court also granted the defendant Attorney General's motion to dismiss based, in part, on Eleventh Amendment immunity grounds.[136]  The court found that Mr. Oliver had

> made this complex litigation more burdensome than it needs to be by including significant amounts of scandalous and impertinent materials in virtually all of his filings, by naming defendants that clearly should never have been named, by bringing claims that are entirely unsupported, by asserting new claims in virtually every new filing, and by filing entirely unreasonable motions that consume the

---

[132] *See Jaramillo v. Price*, No. 2:02cv619 DB (D. Utah).

[133] Order Granting Mot. for Summ. J. 2, *Jaramillo*, No. 2:02cv619 DB (filed May 29, 2004); Pet'r Ex. 21.

[134] *See Joseph v. Salt Lake City Corp.*, No. 2:00cv340 DAK (D. Utah).

[135] Order 11, *Joseph*, No. 2:00cv340 DAK (filed July 17, 2003); Pet'r Ex. 28.

[136] *See* Order 13, *Joseph*, No. 2:00cv340 DAK (filed July 17, 2003); Pet'r Ex. 28.

valuable resources of the court and opposing counsel and their clients.[137]
Mr. Oliver was sanctioned later in the case for again raising an unmeritorious claim.[138]  The court noted specifically that in its previous order it had "admonished Plaintiff and his counsel regarding, among other things, their litigation tactics and the routine filing of unmeritorious motions," and it awarded $2340 in attorneys fees to the defendant.[139]  Accordingly, based on those orders, the Hearing Examiner finds that there was no basis in law or fact for Mr. Oliver to assert the claims and contentions that were the subject of those orders.

37.  In *Olseth v. Salt Lake City Corp.*,[140] the plaintiff's complaint was dismissed after Mr. Oliver failed to respond to an order to show cause why the case should not be dismissed for failure to prosecute, after nearly two years had passed without any activity.[141]  In the order to show cause, the court stated specifically that Mr. Oliver "*is directed to respond in writing* within 15 days from the date of this order and inform the court of the status of the case and intentions to proceed.  Failure to do so will result in dismissal of the case."[142]  In his Response and during his testimony at the evidentiary hearing, Mr. Oliver admitted to failing to respond to this order to

---

[137] *See* Order 11-12, *Joseph*, No. 2:00cv340 DAK (filed July 17, 2003); Pet'r Ex. 28

[138] *See* Order 5, *Joseph*, No. 2:00cv340 DAK (filed Aug. 13, 2004); Pet'r Ex. 29.

[139] Order 5, *Joseph*, No. 2:00cv340 DAK (filed Aug. 13, 2004); Pet'r Ex. 29.

[140] *See Olseth v. Larson*, No. 2:00cv402 TC (D. Utah); Pet'r Ex. 18.

[141] *See* Order, *Olseth*, No. 2:00cv402 TC (filed May 17, 2002).

[142] Order to Show Cause 1, *Olseth*, No. 2:00cv402 TC (filed Apr. 18, 2002) (emphasis added).

show cause because his client had disappeared.[143]  Based on Mr. Oliver's failure to respond to the

order to show cause, the Hearing Examiner finds that this demonstrates Mr. Oliver has

knowingly disobeyed an obligation under the rules of a tribunal and has failed to make

reasonable efforts to expedite litigation.

　　　38.  In ***Johnson v. Salt Lake Community College***,[144] Mr. Oliver filed an opposition to a

motion to dismiss over two weeks late, with no motion for extension of time or accompanying

explanation for the delay.[145]  Mr. Oliver claims he was not late because "[a] rule 12(b)(6) motion

converts to a motion for summary judgment when 'matters outside the pleading are presented to

and not excluded by the court'" and, accordingly, under the local rules, he had "thirty three days

to respond to a motion for summary judgment."[146]  However, Mr. Oliver's explanation is not

credible.  Mr. Oliver's opposition to the motion to dismiss does not provide this explanation or

any other possible reason for his late filing and, in fact, continually refers to the motion as a

"motion to dismiss."[147]  Accordingly, based on Mr. Oliver's dubious explanation for filing his

---

　　　[143] *See* Resp't Verified Resp. to Order to Show Cause 8, *Oliver*, 2:06mc952 (D. Utah filed Oct. 5, 2005); Pet'r Ex. 4; Hr'g Tr. 186-87.

　　　[144] *See Johnson v. Salt Lake Community College*, No. 2:03cv1050 PGC (D. Utah); Pet'r Ex. 12.  This case was consolidated into *Rivera v. Salt Lake Community College*, 2:03cv764 DB (D. Utah).

　　　[145] Mem. in Opp'n to Mot. to Dismiss, *Johnson*, No. 2:03cv1050 PGC (filed Apr. 26, 2004); Pet'r Ex. 13.

　　　[146] Resp't Verified Resp. to Order to Show Cause 7, *Oliver*, 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4.

　　　[147] Mem. in Opp'n to Mot. to Dismiss, *Johnson*, No. 2:03cv1050 PGC (filed Apr. 26, 2004); Pet'r Ex. 13; *see* Hr'g Tr. 204-05.

opposition two weeks late, the Hearing Examiner finds it incredulous, and further finds that Mr. Oliver has knowingly disobeyed an obligation under the rules of a tribunal and failed to make reasonable efforts to expedite litigation.

39.  In ***Lee v. Smith's Food and Drug***,[148] the court granted the defendants' motion to compel and sanctioned the plaintiff for failure to provide initial disclosures and discovery responses after deadlines for both had passed and after the defendants' counsel represented to the court that numerous attempts to obtain the discovery had failed.[149]  The defendants' counsel attempted to resolve the discovery issue with Mr. Oliver five times by letter, once by telephone, and once in person at a deposition.[150]  Mr. Oliver repeatedly indicated to defense counsel that the discovery responses were forthcoming but failed to provide them.[151]  Mr. Oliver also failed to respond to the motion to compel.[152]  Mr. Oliver does not dispute that he failed to timely provide the discovery at issue and admits that "I paid my dues when the court awarded attorney fees and I, not my client[,] paid them."[153]

40.  Mr. Oliver contends that he has rectified the problem with the late answering of

---

[148] *See Lee v. Smith's Food and Drug*, No. 2:03cv810 TC (D. Utah); Pet'r Ex. 14.

[149] *See* Minute Entry, *Lee*, No. 2:03cv810 TC (D. Utah filed May 24, 2004); Pet'r Ex. 14.

[150] *See* Mem. in Supp. of Mot. to Compel 2-3, *Lee*, No. 2:03cv810 TC (filed Apr. 13, 2004); Pet'r Ex. 43.

[151] *See* Mem. in Supp. of Mot. to Compel 2-3, *Lee*, No. 2:03cv810 TC (filed Apr. 13, 2004); Pet'r Ex. 43.

[152] *See* Docket, *Lee*, No. 2:03cv810 TC; Pet'r Ex. 14.

[153] Resp't Verified Resp. to Order to Show Cause 7, *Oliver*, 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4; Hr'g Tr. 205.

discovery: "We have streamlined [the office] calendar[-]wise, and personnel-wise I have let one secretary go that was not helpful.  I've installed an electronic calendar in my computer in my office to track these things, and those are some of the things that we've done."[154]  Thus, based on Mr. Oliver's failure to provide discovery until a motion to compel was filed, the Hearing Examiner finds that Mr. Oliver has failed to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party and failed to make reasonable efforts to expedite litigation.

41.  It should be noted here that more than once in the evidentiary hearing, Mr. Oliver attempted to shift blame for his repeated failures to respond to discovery requests to his office staff and calendaring system.[155]  While these may be contributing factors, Mr. Oliver is ultimately responsible for timely filing responses and cannot cavalierly shift the blame to others.

42.  In *Fox v. Triton Investments, Inc.*,[156] the plaintiff's claim was dismissed after Mr. Oliver failed to respond to an order to show cause why the case should not be dismissed for failure to prosecute.[157]  The dismissal order noted that Mr. Oliver's office's repeated promises to update the court on the status of the case and the plaintiff's intentions had gone unfulfilled.[158]  The court stated that it had been

---

[154] Hr'g Tr. 110-11.

[155] *See id.* at 110-11, 205-06, 225-27.

[156] *Fox v. Triton Inv., Inc.*, No. 2:02cv628 PGC (D. Utah); Pet'r Ex. 19.

[157] *See* Order 1, *Fox*, No. 2:02628 PGC (filed Apr 5, 2005); Pet'r Ex. 20.

[158] *See* Order 1, *Fox.*, No. 2:02cv628 PGC (filed Apr. 5, 2005); Pet'r Ex. 20.

repeatedly promised by plaintiff's counsel that a pleading would be filed
explaining the action's status. Specifically, a paralegal to Mr. Oliver promised the
court that a motion for continuance would be filed by no later than March 14,
2005. Nothing was filed. The court again left messages with Mr. Oliver's office
on March 21, 2005. That call was not returned. On March 25, 2005, the court, as
a final attempt to clarify the status of the action, ordered plaintiff to show cause as
to why his action should not be dismissed for failure to prosecute. As of the date
of this order, no response has been filed.[159]

At the evidentiary hearing, Mr. Oliver testified that his client had "been arrested for some federal

violation. . . . He had been incarcerated and had been sent away. And so we no longer had

contact with him and we could no longer pursue the federal case because of the fact that you

can't bring a federal prisoner back to testify to some case you don't have access to."[160] However,

this does not explain why Mr. Oliver did not update the court after promising to do so or why he

did not respond to the order to show cause. Accordingly, the Hearing Examiner finds that Mr.

Oliver knowingly disobeyed an obligation under the rules of a tribunal and failed to make

reasonable efforts to expedite litigation.

43. In ***Matthews v. South Ogden City***,[161] the court issued an order to show cause why the

plaintiff had not responded to the defendants' motion to compel discovery.[162] In response to the

order to show cause, Mr. Oliver conceded that the motion to compel was well founded, that the

---

[159] Order 1, *Fox*, No. 2:02cv628 PGC (filed Apr. 5, 2005); Pet'r Ex. 20.

[160] Hr'g Tr. 112.

[161] *See Matthews v. South Ogden City*, No. 1:03cv117 PGC (D. Utah).

[162] *See* Order to Show Cause, *Matthews*, No. 1:03cv117 PGC (filed July 27, 2004).

fault was his own, not the plaintiff's, and that an award of attorney fees would be appropriate.[163]

Mr. Oliver's further response revealed part of the reason for these chronic problems:

> In mitigation, counsel asserts that in private practice, often times plaintiff counsel has to prioritize.  Counsel in this matter is no exception.  In the time period at issue . . . counsel has been extremely busy with court appearances and depositions.
>
> In further mitigation, counsel asserts that he has one full time paralegal assistant . . . one scheduling clerk . . . and one billing clerk . . . .  Within the past six months, counsel's new ads are in circulation and have received overwhelming public response.  Counsel has been forced to adjust to an increased inundation of new caller complainants. . . .[[164]]

The court granted the motion for sanctions noting that "being busy is not good cause for failure

to comply with court-imposed deadlines."[165]

44.  In Mr. Oliver's Response, he also claimed that after the problems with responding to

discovery in *Matthews,* he had since reorganized his office practices to avoid being too busy.[166]

At the evidentiary hearing, Mr. Oliver further testified that he had implemented changes in his

office practices immediately after the *Matthews* order, which was issued August 5, 2004.[167]

Accordingly, based on Mr. Oliver's admissions the Hearing Examiner finds that Mr. Oliver

---

[163] *See* Resp. to Order to Show Cause 2, *Matthews*, No. 1:03cv117 PGC (filed Aug. 5, 2004); Pet'r Ex. 26.

[164] Resp. to Order to Show Cause 2, *Matthews*, No. 1:03cv117 PGC (filed Aug. 5, 2004); Pet'r Ex. 26.

[165] Order 2, *Matthews*, No. 1:03cv117 PGC (filed Sept. 7, 2004); Pet'r Ex. 27.

[166] *See* Resp't Verified Resp. to Order to Show Cause 10-11, *Oliver*, No. 2:06mc952 (filed Oct. 5, 2005); Pet'r Ex. 4.

[167] *See* Hr'g Tr. 206-07.

failed to make a reasonably diligent effort to comply with a legally proper discovery request by
an opposing party, failed to make reasonable efforts to expedite litigation, and knowingly
disobeyed an obligation under the rules of a tribunal.

45.  In ***Palmer v. Wal-Mart Stores, Inc.,***[168] Magistrate Judge Wells found that Mr. Oliver
and his client engaged in sanctionable conduct warranting dismissal of his client's complaint.[169]
Specifically, the defendant filed a motion to compel and a motion for sanctions after numerous
attempts to obtain discovery and set depositions had failed.[170]  Magistrate Judge Wells heard oral
argument on the defendant's motions on October 7, 2005.[171]  At the hearing, Mr. Oliver indicated
that one of the dates Magistrate Judge Wells had proposed for a deposition conflicted with a jury
trial he had scheduled before justice court.[172]   Magistrate Judge Wells questioned Mr. Oliver's
assertion that justice courts had jury trials and indicated that she was going to recommend
dismissal of the plaintiff's case to the district court judge for failure to comply with discovery
obligations.[173]

46.  In the written order, however, Magistrate Judge Wells stated that she had verified

---

[168] *See Palmer v. Wal-Mart Stores, Inc.*, No. 2:04cv956 DAK (D. Utah); Pet'r Ex. 48.

[169] *See* Report and Recommendations, *Palmer*, 2:04cv956 (filed Mar. 23, 2006); Pet'r Ex. 31.

[170] *See* Docket, *Palmer*, No. 2:04cv956 DAK; Pet'r Ex. 48.

[171] *See* Docket, *Palmer*, No. 2:04cv956 DAK; Pet'r Ex. 48.

[172] *See* Hr'g Tr. on Mot. to Compel and Mot. for Sanctions 27-28, *Palmer*, No. 2:04cv956 DAK (filed Oct. 25, 2005); Pet'r Ex. 47.

[173] *See* Hr'g Tr. on Mot. to Compel and Mot. for Sanctions 27-28, *Palmer*, No. 2:04cv956 DAK (filed Oct. 25, 2005); Pet'r Ex. 47.

that Mr. Oliver indeed had a jury trial at justice court the following week and that she was not recommending "to the district court that this case be dismissed at this time," but that she was granting the motion to compel and motion for attorney fees and costs and sanctioned Mr. Oliver in the amount of $2688.26.[174]   Magistrate Judge Wells found that sanctions were appropriate because Mr. Oliver (1) "was negligent in returning phone calls," (2) "failed to notify [the defendant's] counsel that his client could not attend a scheduled deposition," and (3) "acted with 'blatant indifference' toward [the defendant's] counsel."[175]   The court also "warn[ed] Mr. Oliver that failure to cooperate and abide by the court's orders may result in the dismissal of the instant action along with further sanctions."[176]   The conduct for which Magistrate Judge Wells sanctioned Mr. Oliver occurred after Mr. Oliver claimed he had since reorganized his office practices and after the Complaint was filed in this matter.[177]

47.  On October 17, 2005, Mr. Oliver objected to the Magistrate's oral order reflected in the minute entry from the October 7 hearing.[178]   Mr. Oliver, however, did not object to the Magistrate's written order and memorandum decision that was issued November 7, 2005, which explicated her oral ruling.[179]

---

[174] Order and Mem. Decision 2-3, *Palmer*, No. 2:04cv956 DAK (filed Nov. 4, 2005).

[175] *Id.* at 2.

[176] *Id.* at 3.

[177] *See supra* ¶¶ 40, 44.

[178] *See* Pla.'s Objections to Magistrate's Recommendation, *Palmer*, No. 2:04cv956 DAK (filed Oct. 17, 2005).

[179] *See* Docket, *Palmer*, No. 2:04cv956 DAK; Pet'r Ex. 48.

48.  On November 18, 2005, Mr. Oliver filed an affidavit of compliance with the November 7, 2005 order and memorandum decision as required by the court.[180]  On November 30, 2005, the defendant filed a second motion for sanctions and a motion to strike untimely witness to which Mr. Oliver responded.[181]  On March 23, 2006, Magistrate Judge Wells issued a report and recommendation on the motions recommending that the district judge dismiss the plaintiff's case for continued discovery abuses.[182]  The Magistrate noted that Mr. Oliver called a "surprise" witness that should have been identified long before the date the witness was called, "obstructed [the defendant's] efforts to depose [p]laintiff's wife, Lupe Palmer," "acted deceptively in telling [the defendant's] counsel on the eve of Lupe's deposition that he would not accept service . . . on her behalf," and failed to provide "sworn verification of [p]laintiff's supplemental discovery responses despite requests by [the defendant] to do so."[183]  Magistrate Judge Wells also noted that Mr. Oliver was uncooperative during his client's deposition.[184]

49.  Mr. Oliver contends in his memorandum in support of his motions to dismiss, in his

---

[180] *See* Pla.'s Aff. of Compliance, *Palmer*, No. 2:04cv956 DAK (filed Nov. 18, 2005).

[181] *See* Def.'s Mot. for Sanctions for Failure to Comply with Court Order, *Palmer*, No. 2:04cv956 DAK (filed Nov. 30, 2005); Def.'s Mot. to Strike Untimely Witness, *Palmer*, No. 2:04cv956 DAK (filed Nov. 30, 2005); Pla.'s Mem. in Opp'n to Mot. for Sanctions, *Palmer*, No. 2:04cv956 DAK (filed Dec. 29, 2005).

[182] *See* Report and Recommendations, *Palmer*, 2:04cv956 (filed Mar. 23, 2006); Pet'r Ex. 31.

[183] Report and Recommendations 6, *Palmer*, No. 2:04cv956 (filed Mar. 23, 2006); Pet'r Ex. 31.

[184] *See* Report and Recommendations 6, *Palmer*, No. 2:04cv956 (filed Mar. 23, 2006); Pet'r Ex. 31.

Proposed Witness and Exhibits List, and in his testimony at the evidentiary hearing that

Magistrate Judge Wells dismissed the plaintiff's case because she is prejudiced against Mr.

Oliver.[185]   For example, Mr. Oliver asserts in his memorandum in support of his motions to

dismiss:

> Having been prejudiced by the [Salt Lake Tribune] article and possibly her role in
> the *Spitler* matter, Judge Wells was in [sic] the October 7, 2005 hearing for the
> motion to compel accused Mr. Oliver of lying to the [c]ourt about the conflict on
> his calendar.  Judge Wells attempted to assist counsel in the scheduling of
> depositions.  She wanted to have the depositions scheduled for the [w]eek of
> October 12-14, 2005.  Mr. Oliver informed the [c]ourt that he had a jury trial set
> on those dates before the Taylorsville City Justice Court.  Judge Wells accused
> Mr. Oliver of lying[,] asserting that justice courts don't conduct jury trials.
> Believing falsely that Mr. Oliver was lying to her, she abruptly dismissed the
> *Palmer* matter.[186]

50.   However, what Mr. Oliver fails to note is that Magistrate Judge Wells does not have

the authority to unilaterally dismiss a case.  Specifically, under 28 U.S.C. § 636(b)(1) "a [district]

judge may designate a magistrate judge to hear and determine any pretrial matter pending before

the court, except a motion . . . to involuntarily dismiss an action."[187]   But a district judge may

designate a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit

to a judge of the court proposed findings of fact and recommendations for the disposition, by a

judge of the court, of any motion" to which objections may be made.[188]   Upon receiving

---

[185] *See* Resp't Proposed Witness and Ex. List 5, *Oliver*, No. 2:06mc952 (filed Dec. 7,
2006); Resp't Mem. Supp. Mot. Dismiss 5, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006); Hr'g Tr.
210.

[186] Resp't Mem. Supp. Mot. Dismiss 5, *Oliver*, No. 2:06mc952 (filed Dec. 1, 2006).

[187] 28 U.S.C. § 636(b)(1)(A).

[188] *Id.* § 636(b)(1)(B).

objections to the magistrate judge's recommendation, the district judge

> *shall make a de novo determination* of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.[189]

51.  On April 3, 2006, Mr. Oliver filed an objection to Magistrate Wells's report and recommendation.[190]  On May 18, 2006, pursuant to 28 U.S.C. § 636(b)(1)(C), Judge Kimball approved and adopted the report and recommendation in its entirety.[191]  The court stated specifically that it had "considered all of the parties' submissions related to the [report and recommendation] and . . . also reviewed the entire case file."[192]

52.  Based on the above, the Hearing Examiner finds that Mr. Oliver has failed to make reasonable efforts to expedite this case for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose and has failed to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

### C.  Mr. Oliver's Evidentiary Hearing Testimony

53.  Mr. Oliver's testimony at the evidentiary hearing was often incredible and at times

---

[189] *Id.* § 636(b)(1)(C) (emphasis added).

[190] *See* Pla.'s Objection to Magistrate Judge's Mar. 23, 2006 Report and Recommendation, *Palmer*, No. 2:04cv956 DAK (filed Apr. 3, 2006).

[191] *See* Order Adopting Report and Recommendations 1, *Palmer*, No. 2:04cv956 (filed May 18, 2006); Pet'r Ex. 44.

[192] Order Adopting Report and Recommendations 1, *Palmer*, No. 2:04cv956 (filed May 18, 2006); Pet'r Ex 44.

outrageous.  He was antagonistic, defensive, arrogant, and combative in his testimony.  It

revealed that at best, Mr. Oliver is completely uninformed about his professional responsibilities,

and at worst, he was lying under oath.  The following examples of Mr. Oliver's testimony

demonstrate his defiant attitude.

### (i)  Cases Barred Under the Eleventh Amendment

54.  When asked about his practice of repeatedly filing cases barred by the Eleventh

Amendment, Mr. Oliver stated that he was relying on a treatise that suggested that Eleventh

Amendment immunity was "an affirmative defense that needed to be [pleaded] by the

defendant."[193]  The following is an exchange between Ms. Tomsic and Mr. Oliver at the

evidentiary hearing clarifying Mr. Oliver's position regarding these types of cases.

> Q.  (By Ms. Tomsic)  Mr. Oliver, we have looked at at least two cases
> before the hearing examiner in which you filed litigation against the State of Utah,
> and the State of Utah came in and filed motions to dismiss on the grounds of the
> Eleventh Amendment.  After you lost, and that is the motions were granted in
> those cases, . . . you continued to file litigation, the same kind of litigation against
> the State of Utah knowing that the State of Utah was going to raise the Eleventh
> Amendment as a bar, didn't you?
> A.  [(By Mr. Oliver)] Not necessarily.  As I've indicated, it's an
> affirmative defense, and if they choose to, they can, and if they choose not to, they
> don't need to.  So, no, I'm not sure that I agree with that.
> Q.  When you filed litigation against the State of Utah after the State of
> Utah had filed the motions to dismiss on Eleventh Amendment grounds in other
> cases, what factual basis did you have to believe that the State of Utah would not
> assert the Eleventh Amendment?
> A.  Well, each case is different and each case has a different attorney.
> And not every – not every case has the same AG on – the same attorney general
> on it or assistant attorney general on it.  And so, consequently, if one misses it,
> we're okay.  It's not – it's not at all an assumed fact that that's going to be the

---

[193] Hr'g Tr. 160.

case, and I've already stated the treatise that we relied upon.[194]

55.   When asked about the cost to the Utah Attorney General's Office and to taxpayers regarding defending against actions barred by the Eleventh Amendment, Mr. Oliver stated, "Well, that's an interesting question, but I think the answer is yes, but they had – the attorney general is employed by the State.  I don't think the State incurred any extra expense, but, yes. . . . Well, [the attorneys are] still employed whether they're filing a motion or whether they're not.  I don't think there was any additional expense incurred is all I'm saying."[195]

56.   A follow-up question to the answer in paragraph 55 illustrates Mr. Oliver's view with respect to the time and effort by the court in addressing actions barred by the Eleventh Amendment.

> Q.   [(By Ms. Tomsic)]  And you would agree with me that by not voluntarily dismissing those claims and requiring this hearing that the [c]ourt had to spend its time reading the relevant pleadings with regard to the motion to dismiss with sanctions, hold a hearing to hear the arguments and then write an opinion, is that –
> A.   [(By Mr. Oliver)]  Well, I think the answer to that question is yes. However, if I may just say that to the contrary on each one of the order to show causes [sic] where I didn't respond, you're using the adverse argument – the reverse argument saying that I should have responded and cost the [c]ourt time and so forth, and I didn't object to the dismissal.  And also in a couple of cases where I agreed that they had a summary judgment argument that I did not contest it, it's your position that I – that I was unethical by not responding and forcing the [c]ourt to use its time and energy and efforts to litigate.  So I think your question is –  the answer to your question is yes.[196]

---

[194] *Id.* at 177-78.

[195] *Id.* at 180.

[196] *Id.* at 180.

### (ii)  Prior Sanctions

57.  Mr. Oliver testified that he believes that once an attorney has been sanctioned by a judge in this district for particular conduct, that should be the end of any action taken by this court relative to the conduct and should not be the basis for a disciplinary proceeding.  The following exchange between Ms. Tomsic and Mr. Oliver illustrates his view.

> Q.  [(By Ms. Tomsic)]  My question is this:  Is it your testimony that once you have been sanctioned by a judge in this district for a particular conduct, that that should be the end of any action taken by this [c]ourt relative to that conduct and should not be the basis for a disciplinary proceeding?
>
> A.  [(By Mr. Oliver)]  Well, yeah.  I think that – I think that that may well be the case.  I think if you're sanctioned for something that is unethical, as far as the Rules of Professional Conduct define it, for the most part, I think that, you know, your client is the one who raises those issues.  I've never seen it done any other way except in this case.  But, yeah, I think if the [c]ourt sanctions you, and you've been punished for it, I don't see where Judge Cassell or anybody else should come along and punish you a second time because of that.  That's inappropriate.
>
> Q.  Is it also your testimony that you adhered to that view no matter how many times you may have been sanctioned or engaged in the same conduct?
>
> A.  That's an interesting question, but if you are sanctioned and you pay your sanctions, you accept your punishment.  And then sometime later, somebody comes back and accumulates a mass of these particular issues, I'm not sure that it is appropriate to do it that way.  So I think that I would agree that once you've been sanctioned, that's where it goes.[197]

58.  The following exchange between the Hearing Examiner and Mr. Oliver further clarifies Mr. Oliver's position on this subject.

> [Q.  (By the Hearing Examiner)]  Mr. Oliver, . . . By way of analogy – I say "analogy," it may not be, but it's just something that comes to my mind.  Under the . . . state driving rules, I believe we have a point system.  You can get multiple citations for speeding, as an example, and you pay a fine, $50, $75 fine for speeding.  Six months later you get another one.  In another six months you get

---

[197] *Id.* at 174-75.

one, and, ultimately, you accumulate 200 points, or whatever it is.  And then the [d]river's [l]icense [d]ivision comes after your driver's license.  And they are seeking to revoke your driver's license because you've had multiple violations of speeding infractions, yet on each infraction you were fined by a local municipality or a [c]ourt, so you were sanctioned at the time.  Are you suggesting, then, that the [d]river's [l]icense [d]ivision in that example shouldn't then come back and consider the pattern of misconduct of speeding and then institute proceedings to revoke your license?

[A.  (By Mr. Oliver)]  Well, they do that.  That is the practice administratively with the [d]river's [l]icense [d]ivision; however, the courts have ruled that a driver's license is a privilege and not a right.  And if it were a right, if they actually ruled – if the courts ruled that the driving privilege was a right, then it would be afforded other protections.

[Q.]  And is the practice of law a privilege or a right?

[A.]  It's a right.

[Q.]  It's a right?

[A.]  Yes.  It's a property right that I have.  And the Constitution guarantees me my property right and my ability to earn income, my ability to be independent, because I think that's well[]established in many, many cases.  I don't have one here with me, but I've used them before.  And, yes, this is a property right that I have.  My title, my – that's why I'm entitled due process in these types of hearings is because it is a right.[198]

### (iii)  Cases Barred by the Statute of Limitations

59.  Mr. Oliver also indicated that believes it to be permissible to file a claim that is barred by the statute of limitations.[199]  At the evidentiary hearing, Mr. Oliver was asked to clarify his testimony regarding his filing of claims knowing that they are barred by the statute of limitations.

Q.  [(By Ms. Tomsic)]  And just following your logic, is it your testimony that even though you know a claim is barred by the applicable statute of limitations, it is your belief and understanding that you can file that claim consistent with your obligations?

---

[198] Hr'g Tr. 175-76.

[199] *See id.* at 172.

A.   [(By Mr. Oliver)]  Well, I think that the sad thing about it is that oftentimes there's different interpretations.  There's a discovery rule that deals with the statute of limitations, things of that nature.  And so, consequently, if you file an action that you believe is within the statute of limitations, you do your precise computations, you work it out, and then it turns out that, indeed, the statute isn't barred to the prosecution because there's other facts that come up that you were unaware of, I see no problem with that.  I don't think that an attorney is obligated to raise all of the defenses that need to be raised, otherwise we wouldn't be talking about affirmative defenses and the rules.

Q.   Can you answer the question I asked you, please.  My question is:  Is it your testimony that you believe you're not in violation of any local, federal or professional rule of responsibility if you file a claim that you know and that you have concluded is barred by the statute of limitations?

A.   If I understand your question, no, I don't think that's a violation of the rules to file a claim that you know is barred by the statute of limitations.  I think I answered that question before.[200]

### (iv)  Orders to Show Cause

60. When asked to clarify his position regarding whether or not he must respond to orders to show cause, Mr. Oliver stated:

[W]hen I received the order that says that – the requesting to show cause why it should not be dismissed, and then it says that if you fail to respond the case will be dismissed.  And it seems to me that in that order to show cause that itself is saying it's okay not to respond, because if you don't, your case is going to be dismissed.  I would assume that if the [c]ourt did not believe that that was an option to not responding, that the [c]ourt would say, "You know, you need to respond to this, and failure to respond will result in sanctions," but that's not what the [c]ourt said.  The [c]ourt says, "If you don't respond, the case will be dismissed."  So we acquiesced in that and I believe that that's appropriate, you don't need to respond.[201]

61.  The following testimony further explains Mr. Oliver's position relative to orders to show cause.

---

[200] *Id.* at 171-72.

[201] *Id.* at 217.

Q.   [(By Ms. Tomsic)]  Mr. Oliver, with regard to the orders to show cause, it's true, isn't it, that you did not prosecute those cases and did not voluntarily dismiss those cases prior to the [c]ourt taking the action to determine nothing had been done and, on its own, dismissing the actions?

A.   [(By Mr. Oliver)]  I voluntarily acquiesced in the [c]ourt dismissing the action.

Q.   Well, you didn't let the [c]ourt know that you weren't going to prosecute them, you required the [c]ourt to go through that effort?

A.   No, I didn't require the [c]ourt to do anything.  The [c]ourt did it on its own.[202]

### (v)  Rule 3.4: Obligation Under the Rules of a Tribunal

62.  When asked whether he understands that rule 3.4 of the Utah Rules of Professional Conduct prohibits a lawyer from "knowingly disobey[ing] an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists,"[203] the following exchange took place between Mr. Oliver and Ms. Tomsic.

A.   [(By Mr. Oliver)]  I would suggest that if [rule 3.4 is] interpreted that strictly then, yes; but I would also suggest, then, that that means that every time a motion to compel, as I believe that's where you're headed, is filed against an attorney, that also that that attorney should be referred to the Bar because that's – if that's what this is referring to, then quite candidly, almost every attorney who practices in court one time or another will do that.  For instance – well, that's it.

Q.   [(By Ms. Tomsic)]  I don't think you answered my question.  Would you agree with me that if a lawyer engages in the conduct described in subsection [(c)] of [r]ule 3.4, [Petitioner's] Exhibit 36, that that would be a violation of [r]ule 3.4?

A.   And I'd be happy to answer that again.  As I indicated that if you interpret that strictly to say that you must abide by all discovery requests then, yes.  However, if that's the case, then I believe that every attorney who has a motion to compel filed against them one, two or ten, it doesn't make any difference, should be referred to the Bar for violating that provision.  I'm not sure that that's specifically what it refers to.  I thought I answered your question directly before.

---

[202] *Id.* at 181.

[203] Utah R. Prof'l Conduct 3.4.

Q.   Let me ask you this question:  Are you testifying that with regard to every motion to compel that you're aware of that's ever been filed by you or anyone else, a [c]ourt has never denied the motion to compel on the grounds that other parties are not entitled to the documents sought or information sought?

A.   I don't know.  I don't think I said that.  I don't believe that I've taken that position.  I don't believe I've said that.[204]

## IV.  CONCLUSIONS OF LAW

1.  It is the prosecution's burden to establish charges of misconduct by a preponderance of the evidence.[205]

2.  On its face, that standard of proof applies regardless of the sanction recommended, and there is no controlling authority to the contrary.  However, authorities in other jurisdictions and analogous case law from this jurisdiction suggest that, if the recommended sanction is suspension or disbarment, the prosecution must establish the violations by clear and convincing evidence.[206]  Because the prosecution recommends that Mr. Oliver be suspended, the Hearing Examiner will apply the clear and convincing standard to the evidence in the record.

3.  The United States Supreme Court has defined the standard of clear and convincing evidence as that weight of proof which

"produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without

---

[204] Hr'g Tr. 168-69.

[205] *See* DUCivR 83-1.5(h)(3)(C).

[206] *See In re Phelps*, 637 F.2d 171 (10th Cir. 1981).  *See also In re Medrano*, 956 F.2d 101 (5th Cir. 1992); *In re Jaques*, 972 F.Supp 1070, 1079, 1084 (E.D. Tex. 1997).

hesitancy, of the truth of the precise facts of the case."[207]

4.  The prosecution has met its burden of proof.  The evidence in the evidentiary hearing proves Mr. Oliver violated the Utah Rules of Professional Conduct, not only by a preponderance of the evidence, but also by clear and convincing evidence.

5.  Mr. Oliver violated rules 3.1 and 8.4(a) of the Utah Rules of Professional Conduct by filing frivolous complaints, claims, and/or contentions in *Cook v. Chase Manhattan Mort. Corp.*, 2:05cv16 TS; *Holmes v. State*, 2:04cv940 PGC; *Drake v. State*, 2:04cv689 DAK; *Bohn v. Jordan School Dist.*, 2:04cv531 TS; *McGraw v. Salt Lake Community College*, 2:03cv765 TS, *Rivera v. Salt Lake Community College*, 2:03cv764 DB; *Jaramillo v. Price*, 2:02cv619 DB; *Beene v. State*, 2:02cv322 DAK; *Salas v. Brems*, 2:02cv273 TS; *Trujillo v. Group 4 Falck*, 2:02cv162 TC; *Joseph v. Salt Lake City Corp.*, 2:00cv340 DAK; and *Spitler v. Ogden City Corp.*, 1:03cv119 PGC.

6.  Mr. Oliver violated rules 3.2, 3.4, and 8.4(a) of the Utah Rules of Professional Conduct by failing to respond to orders to show cause, failing to respond to proper discovery requests, and failing to withdraw frivolous claims either upon request by opposing counsel or when dispositive motions were filed relative to those claims in *Cook v. Chase Manhattan Mort. Corp.*, 2:05cv16 TS; *Holmes v. State*, 2:04cv940 PGC; *Drake v. State*, 2:04cv689 DAK; *Bohn v. Jordan School Dist.*, 2:04cv531 TS; *McGraw v. Salt Lake Community College*, 2:03cv765 TS, *Rivera v. Salt Lake Community College*, 2:03cv764 DB; *Beene v. State*, 2:02cv322 DAK; *Salas*

---

[207] *In re Medrano*, 956 F.2d at 102 (quoting *Cruzan v. Missouri Dept. of Health*, 497 U.S. 261 (1990)).

*v. Brems*, 2:02cv273 TS; *Trujillo v. Group 4 Falck*, 2:02cv162 TC; *Olseth v. Larson*, 2:00cv402 TC; *Spitler v. Ogden City Corp.*, 1:03cv119 PGC; *Johnson v. Salt Lake Community College*, 2:03cv1050 PGC; *Lee v. Smith's Food & Drug*, 2:03cv810 TC; *Fox v. Triton Investments*, 2:02cv628 PGC; *Matthews v. South Ogden City*, 1:03cv117 PGC; and *Palmer v. Wal-Mart Stores, Inc.*, 2:04cv956 DAK.

7.   While there are no guidelines in the court's rules as to what sanction to impose if an ethical violation is established, the Hearing Examiner holds that, prior to imposing a sanction, it is appropriate to consider certain aggravating and mitigating circumstances.[208]

8.   In general, courts consider whether or not certain aggravating circumstances are present in determining the appropriate sanction.  Those relevant here include whether there is a prior record of discipline, a pattern of misconduct, multiple offenses, a refusal to acknowledge the wrongful nature of the attorney's misconduct, and substantial experience in the practice of law.[209]

9.   Courts also consider whether or not certain mitigating circumstances are present in determining the appropriate sanction.  Those relevant here include an absence of a dishonest or selfish motive and the imposition of other penalties or sanctions.[210]

10.   The evidence admitted in the evidentiary hearing proves several aggravating

---

[208] *See* Utah Sup. Ct. R. Prof'l Practice 14-607; ABA Standards for Imposing Lawyer Sanctions 9.0; Pet'r Ex. 49, 50.

[209] *See* Utah Sup. Ct. R. Prof'l Practice 14-607(a); ABA Standards for Imposing Lawyer Sanctions 9.2; Pet'r Ex. 49, 50.

[210] *See* Utah Sup. Ct. R. Prof'l Practice 14-607(b); ABA Standards for Imposing Lawyer Sanctions 9.3; Pet'r Ex. 49, 50.

circumstances not only by a preponderance of the evidence, but by clear and convincing evidence. The clear and convincing evidence demonstrates that Mr. Oliver: (a) was disciplined by this court on at least eight occasions for discovery violations, rule 11 violations, or filing baseless claims; (b) engaged in a pattern of misconduct; (c) committed multiple offenses by violating rules 3.1, 3.2, 3.4, and 8.4(a) of the Utah Rules of Professional Conduct; (d) refuses to acknowledge the wrongful nature of his conduct; and (e) has substantial experience in the practice of law.

11. As a mitigating circumstance, there is no evidence suggesting that Mr. Oliver's misconduct was driven by a dishonest or selfish motive. In addition, the same evidence which demonstrates Mr. Oliver's prior record of discipline also demonstrates that he has personally paid monetary sanctions.

12. The impact, if any, of the applicable mitigating circumstances is substantially outweighed by the nature and extent of the applicable aggravating circumstances. In particular, any mitigating circumstances are substantially outweighed by the facts that (a) Mr. Oliver has been admonished and/or sanctioned by the court to no avail in several of the underlying cases, (b) he has continued his pattern of misconduct after the Complaint was filed in this matter, and (c) he has continued to refuse to acknowledge the wrongful nature of his misconduct.

13. Finally, while again there are no guidelines in the court's rules as to when suspension is the appropriate sanction, the Hearing Examiner holds that, prior to imposing a sanction of suspension, it is appropriate to consider certain factors.[211]

---

[211] *See* Utah Sup. Ct. R. Prof'l Practice 14-605; ABA Standards for Imposing Lawyer Sanctions 2.2-2.8; Pet'r Ex. 49.

14.   In general, it is appropriate to suspend an attorney from the practice of law when the attorney knowingly violated court orders and rules and caused injury or potential injury to opposing parties, the public, or the legal system.[212]

15.   The evidence admitted in the evidentiary hearing proves, not only by a preponderance of the evidence, but by clear and convincing evidence, that Mr. Oliver knew that he violated court orders and rules, and caused injury or potential injury to the court, opposing parties, and the public.

16.   Throughout this process, Mr. Oliver repeatedly attempted to collaterally attack many of the orders at issue in this disciplinary matter.  However, he cannot now go back and attempt to justify his actions in those cases or explain ex parte why a court ruled a particular way.  Each order constitutes the law of that particular case, and the proper time and venue to attack previous orders was to appeal to the Tenth Circuit Court of Appeals at the time the order was entered.  In addition, Mr. Oliver has absolutely no regard for the rules of professional conduct and/or no regard for his mandatory obligations under those rules.  Mr. Oliver has no insight into his flawed methodology for practicing law.  He has a rogue practice in which he repeatedly files frivolous claims, fails to respond to legitimate discovery requests, fails to respond to dispositive motions, and ignores orders from this court.  Mr. Oliver defiantly refuses to take any responsibility for his misconduct or even recognize that his actions (or failures to act) constitute professional misconduct.  The Hearing Examiner holds Mr. Oliver's conduct to be incredibly disrespectful to

---

[212] *See* Utah Sup. Ct. R. Prof'l Practice 14-605(b) ("Suspension is generally appropriate when a lawyer . . . knowingly engages in professional misconduct as defined in [r]ule 8.4(a), (d), (e), or (f) of the Rules of Professional Conduct and causes injury or potential injury to a party, the public, or the legal system, or causes interference or potential interference with a legal proceeding . . . .").

the court, opposing counsel, and parties.  Mr. Oliver has abandoned any sense of professionalism.

## V.  RECOMMENDATION

In the R&R, the Committee initially recommended a three month suspension.[213]
However, after consultation and deliberation with the other Committee members, Ms. Tomsic
recommended at the conclusion of the evidentiary hearing at least a six month suspension based
on Mr. Oliver's position that this disciplinary matter was due to "a vendetta and a conspiracy,
and that he's done absolutely nothing wrong."[214]  The Hearing Examiner has thoroughly
considered and greatly appreciates the Committee's recommendation.  However, after having sat
through the evidentiary hearing, carefully reviewing the record, and most especially hearing the
testimony of Mr. Oliver, the Hearing Examiner is convinced and persuaded that six months is not
a sufficient suspension.  Indeed, the attitude, arrogance, defiance, and demeanor displayed by Mr.
Oliver at the hearing, along with all other evidence, all cause the Hearing Examiner to conclude
and recommend a more severe sanction which more appropriately reflects the egregious nature of
Mr. Oliver's conduct and his lack of understanding concerning it.

Mr. Oliver has demonstrated that he does not intend to voluntarily initiate or effect
changes in his practice to insure that he meets the standards under the Utah Rules of Professional
Conduct without substantial intervention from the Panel.  Accordingly, the Hearing Examiner
recommends to the Panel that Mr. Oliver be publicly reprimanded and suspended from the
practice of law before the United States District Court for the District of Utah for the period of at
least one year.  The Hearing Examiner also recommends that, while suspended and prior to

---

[213] *See* R&R, *Oliver*, No. 2:06mc952 (filed May 11, 2006); Pet'r Ex. 1.

[214] *See* Hr'g Tr. 16.

reinstatement, Mr. Oliver be required to attend a class on professional responsibility from the

Utah State Bar.  The Hearing Examiner further recommends that, as a condition of reinstatement,

Mr. Oliver demonstrate by way of the affidavit required under DUCivR 83-1.5(i) that, *inter alia*,

he has substantially reorganized his law practice so as to eliminate any future misconduct and he

acknowledges his conduct violated the Utah Rules of Professional Conduct.  Finally, the Hearing

Examiner recommends that, upon reinstatement, Mr. Oliver be placed on probation for a period

of three years, during which time Mr. Oliver will be immediately suspended for six months upon

a determination by an investigator appointed by the Committee that Mr. Oliver has again violated

rule 3.1, 3.2, 3.4, or 8.4 of the Utah Rules of Professional Conduct, after a formal disciplinary

complaint has been filed and Mr. Oliver has been given an opportunity to file a verified response.

  DATED this 27th day of February, 2007.

        BY THE COURT:


        _____

        PAUL M. WARNER
        United States Magistrate Judge